**Michael L. CLARK, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 20A03–9309–PC–317.**

Court of Appeals of Indiana,
Third District.

March 27, 1995.

Rehearing Denied May 9, 1995.

Transfer Denied July 11, 1995.

---

Susan K. Carpenter, Public Defender of Indiana, Margaret O'Donnell, Sp. Asst., Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana, Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner Michael L. Clark appeals the denial of his petition for post-conviction relief. The facts relevant to the appeal appear below.

Clark's conviction was affirmed by the supreme court on direct appeal in October 1986. *Clark v. State* (1986), Ind., 498 N.E.2d 918, 923. In his direct appeal, Clark alleged that the identification evidence was insufficient; that evidence of a deadly weapon was insufficient; that the refusal of an instruction was error; that the refusal of his request for a pretrial lineup was error; that the failure to suppress evidence of the BB pistol seized by police pursuant to a search warrant was error; that the refusal to grant his *pro se* motion for release on his own recognizance was error; that the failure to grant his *pro se* motion to dismiss trial counsel was error; that the failure to grant his *pro se* motion for a continuance was error; that the denial of his motion for appointment of a private investigator and an expert witness was error; that the admission into evidence of two State's exhibits during the habitual offender phase of the proceedings was error; and that allowing the exhibits to be sent to the jury room was error.

On review of the post-conviction proceeding, Clark raises the following restated issues:

1) whether the search of the residence at which Clark was staying was pretextual and conducted without probable cause;

2) whether the identification process was inherently unreliable giving rise to a substantial likelihood of misidentification;

3) whether Clark was denied his right to a fair trial when an officer testified regarding statements by an anonymous telephone caller revealing that Clark had a criminal history, and the existence of outstanding warrants for Clark's arrest;

4) whether the prosecutor engaged in misconduct which denied Clark a fair trial;

5) whether Clark was denied his right to a fair trial because a juror slept during a portion of his trial;

6) whether sufficient evidence supports the finding that Clark is an habitual offender; and

7) whether Clark was denied effective assistance of trial and appellate counsel.

A petitioner bears the burden of establishing grounds for post-conviction relief by a preponderance of the evidence. *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 916. A court on review will consider only the evidence and reasonable inferences supporting the judgment of the post-conviction court. *Id.* The post-conviction court acts as the sole judge of the evidence and the credibility of the witnesses. *Id.* Accordingly, to prevail on appeal from the denial of post-conviction relief, a petitioner must demonstrate that the evidence as a whole leads unerringly and

unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

■ As consistently noted, post-conviction procedures do not afford the convicted an opportunity for a "super appeal." *Id.* Instead, post-conviction remedies are reserved for subsequent collateral challenges to convictions based upon grounds enumerated in the post-conviction rules. *Id.* at 916–917. "Issues which were or could have been raised on direct appeal are not available for review in post-conviction." *Id.* at 917. Thus, concepts of waiver, for failure to raise issues available, and *res judicata,* barring relitigation of issues previously adjudicated, are fully applicable to post-conviction proceedings. *Maxey v. State* (1992), Ind.App., 596 N.E.2d 908, 910–911.

In June 1989, Clark filed his petition for post-conviction relief. The petition was amended in April 1992. The State does not argue nor does the record reveal the filing of an answer. In its decision, the post-conviction court addressed the merits of each issue presented. On appeal, Clark contends that this Court cannot apply the doctrines of waiver or *res judicata* because they were not properly advanced by the State and because the trial court addressed the merits of the issues presented.

■ Both waiver and *res judicata* are listed in the trial rules as affirmative defenses. *See* Ind.Trial Rule 8(C). As a general rule, affirmative defenses must be pleaded specifically or they will be lost. *See City of Gary v. Belovich* (1993), Ind.App., 623 N.E.2d 1084, 1087 (*res judicata* must be pleaded affirmatively by way of answer). In the post-conviction setting, the concepts of *res judicata* and waiver were thoroughly discussed in *Mickens v. State* (1991), Ind.App., 579 N.E.2d 615, 617–619, *trans. granted* (1992), Ind., 596 N.E.2d 1379, 1381 (opinion affirmed in all respects except State need not cross-appeal to raise waiver in appellate brief if pleaded by State in answer, even if post-conviction court looks to other grounds), DeBruler, J. dissenting in which Krahulik, J. concurred.

Moreover, as directly applicable to the present action, the *Mickens* court reviewed the development of case law relative to the

State's failure to plead *res judicata* and/or waiver or to raise the post-conviction court's failure to find *res judicata* and/or waiver in a cross-appeal. *Id.* at 617–619 n. 8. As our case law has developed, the State's failure to "preserve" the issues results in a requirement that the action be reviewed on the merits which effectively allows a post-conviction litigant the "super appeal" repeatedly spurned beginning with the seminal case of *Langley v. State* (1971), 256 Ind. 199, 267 N.E.2d 538. *See Mickens,* 579 N.E.2d at 619, n. 8.

The Court of Appeals in *Mickens* noted that the State's failure to properly preserve the issues places this Court "in the judicially uncomfortable and inappropriate position of having to rule on questions already decided." *Id.* However by distilling the concept of *res judicata* to its essence, it is clear that review of actions finally determined is barred. This is especially true when the Court of Appeals is asked to re-review questions finally determined by our supreme court. Our supreme court in *Mickens,* 596 N.E.2d at 1381, determined that the State may persist in alleging waiver and presumably *res judicata* even if the post-conviction court does not base its decision on those concepts. The State's failure to somehow preserve the issues cannot allow this Court to engage in the legal fiction that the issues have not been previously determined.

■ Moreover, basing the type of review to which a postconviction petitioner is entitled upon the action or inaction of the opposing party in its answer to the petition is nothing short of arbitrary. Standards of review may be altered by a party's failure to plead or object at proceedings; however, standards of review should not be determined by the opposing party's conduct.

Black's Law Dictionary 6th Ed. (1990) defines *res judicata* as:

"A matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment. Rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an

absolute bar to a subsequent action involving the same claim, demand or cause of action. [Citation omitted]. And to be applicable, requires identity in thing sued for as well as identity of cause of action, of persons and parties to action, and of quality in persons for or against whom claim is made. The sum and substance of the whole rule is that a matter once judicially decided is finally decided. *Allen v. McCurry*, 449 U.S. 90 [94–96], 101 S.Ct. 411, 415, 66 L.Ed.2d 308."

*See also Galloway v. State* (1985), Ind.App., 485 N.E.2d 637, 639 (twin doctrines of *res judicata* and law of the case preclude relitigation of issues decided in a previous appellate decision).

In *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, *cert. den.*, 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218, our supreme court reiterated the purpose of postconviction relief and relied upon *res judicata:*

"The purpose of the post-conviction relief process is to raise issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time. Where an item was available to the defendant on direct appeal but not pursued, it is waived for post-conviction review. *Sims v. State* (1988), Ind., 521 N.E.2d 336, 337. An issue which is raised and determined adverse to petitioner's position is *res judicata*. *Ingram v. State* (1987), Ind., 508 N.E.2d 805, 807."

*Id.* at 1204–1205.

The *Schiro* court went on to hold that post-conviction relief procedures are not available in perpetuity. *Id.* at 1205. The court approvingly cited Court of Appeals cases:

"The court of appeals recently stated in *Alston v. State* (1988), Ind.App., 521 N.E.2d 1331, 1335, that they would not 'take a step backward and create a new vehicle by which a defendant could use a PCR to attack a previous PCR on the grounds of incompetency of counsel in that PCR hearing, and then use yet a third PCR to attack the competency of counsel

of the second PCR and so on in perpetuity.' In *Lane v. State* (1988), Ind., 521 N.E.2d 947, this Court noted that ineffective assistance of trial counsel would have been an issue available in the post-conviction petition. 'Lane's allegation of ineffective assistance is clearly an attempt to circumvent Rule PC 1, section 8, in order to present evidence on issues that had been waived.' We stated further, 'Lane cannot evade PC Rule 1, section 8, just by typing the words "ineffective assistance of counsel." ' " *Id.* 521 N.E.2d at 949.

*Id.*

 It is clear that at some point, whether specifically pleaded by the State or not, a post-conviction petitioner is not entitled to further review of questions finally determined. In this case, two of Clark's post-conviction issues were finally determined in his direct appeal. Clark's issues regarding the search of the apartment and misidentification will not be addressed again.

It is less compelling to apply the doctrine of waiver to issues which could have been raised on direct appeal but were not, especially when ineffective assistance of counsel is alleged.[1] Accordingly, at this stage Clark is entitled to review of the remaining issues raised.

 Clark complains that at his trial, a police officer improperly testified that Clark "had gotten out of prison a short time prior to his arrival in Elkhart." Further, the officer testified that Clark "possibly had a criminal history" and that outstanding warrants for Clark's arrest existed. The statements were made in the context of the officer explaining how Clark came to be a suspect in the robbery for which he was convicted. Clark did not testify at trial. Clark characterizes the evidence of his guilt as weak and complains that the jury's exposure to his criminal history was so prejudicial that a new trial is in order.

Here, the police officer explained that an anonymous telephone caller reported Clark's

---

1. This decision does not address the relationship between T.R. 8(C) requiring affirmative defenses to be pleaded specifically and the doctrine of waiver with regard to post-conviction proceedings.

and Clark's girlfriend's whereabouts. The caller was aware that outstanding warrants existed for their arrests. The officer further explained that while serving the arrest warrants, various items of illegal contraband were within the view of the officers which prompted them to return with a search warrant. During the search of the apartment, evidence of the robbery was discovered.[2] The officer did not testify as to the nature of the crimes for which the arrest warrants had been issued or for which Clark may have been imprisoned. Further, the jury was admonished not to consider the testimony as evidence of the truth of the matter asserted rather the evidence was admitted "for the limited purpose of showing the course of conduct of the police officer."

■ Out-of-court statements introduced primarily to explain why a particular course of action was taken during a criminal investigation are not offered for the truth of the matter asserted and are not hearsay statements. *Holliday v. State* (1992), Ind.App., 601 N.E.2d 385, 387. Here, as in *Holliday* the statements were not admitted to demonstrate participation in any particular crime but only as explanation as to the course of the investigation. *Cf. id.* at 388 (statement also contained allegation of involvement in other non-related criminal conduct; however, testimony was offered for purpose of explaining how officer was placed in a position to arrest defendant and did not violate defendant's right of confrontation); *Craig v. State* (1994) Ind., 630 N.E.2d 207, 210–212 (specific steps should be taken by trial court to insure that evidence not admitted as substantive evidence and not outweighed by prejudice).

Clark's insistence that the testimony was hearsay, that other evidence was weak, and that the prosecutor engaged in misconduct by eliciting the testimony are allegations without merit. No error occurred in the present case, especially in light of the admonition to the jury regarding its use of the testimony.

Next, Clark alleges that the prosecutor engaged in misconduct by failing to disclose

the criminal histories of one of its witnesses, Kathy Chandler, and of a defense witness, Mary Wyman. Clark complains that he was denied the opportunity to impeach Chandler with evidence of her criminal history and that he was prejudiced by the State's ability to impeach Wyman.

■ A claim of prosecutorial misconduct requires a two-stage inquiry: 1) whether the prosecutor engaged in misconduct and 2) whether the misconduct placed the defendant in a position of grave peril or evinced a deliberate attempt to improperly prejudice the defendant. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 120. The admissibility of previous crimes to impeach a witness is limited to those crimes which are infamous and those which reflect upon a person's propensity for telling the truth. *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362, 1366–1367. Even when evidence of crimes is admissible, its exclusion constitutes reversible error only if it is demonstrated that the error resulted in such prejudice that the defendant was denied a fair trial. *Id.* at 1367.

On direct examination during Clark's post-conviction hearing, trial counsel stated that he could not remember whether he was supplied with information regarding Chandler's Michigan conviction for shoplifting. He then stated that he seemed to remember that he had that information but did not question the witness regarding the conviction. It is not clear that the State failed to disclose Chandler's criminal history.

■ Without determining whether prosecutorial misconduct occurred, as argued by the State, Clark has failed to demonstrate that he was placed in a position of grave peril or that a deliberate attempt was made to improperly prejudice him. Chandler testified regarding a conversation between Clark and his girlfriend involving the girlfriend's lack of money. Chandler further testified that later Clark returned with money. The evidence, while not inconsistent with Clark's perpetration of the robbery, in no way provided direct evidence against Clark.

---

**2.** See *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112, citing *Clark*, 498 N.E.2d 918, finding that discovery of items seized in plain view need not be discovered inadvertently.

■ Similarly, the record does not affirmatively reflect a failure by the State to reveal Wyman's criminal history. At Clark's trial, Wyman testified that from her vantage point across the street from the bakery which was robbed, she believed the robber was taller than Clark. Although on cross-examination, Wyman admitted she had a previous conviction for shoplifting, there is no indication that such an admission would have played a role in the decision whether to call Wyman as a witness. Even if Clark was not aware of Wyman's criminal history, there is no indication that her testimony would have been discarded or less useful had he been aware of the shoplifting conviction. Clark has not demonstrated prejudice.

Next, Clark baldly asserts that he was denied a fair trial because he recalls that a juror was sleeping during his trial. Clark acknowledges that his trial counsel has no recollection of the incident; however, he contends that counsel nudged him during the trial to direct his attention toward a sleeping juror. At the post-conviction hearing, trial counsel stated that he did not dispute Clark's memory but that he had no recollection of the episode. Further, counsel stated that had he noticed a sleeping juror and thought it was at all desirable, he would have called the lapse to the judge's attention.

The record does not reveal that a juror slept or was inattentive, or at what stage in the proceedings such an incident would have occurred. Moreover, other than mentioning that he remembered the incident, Clark's post-conviction hearing testimony does not reveal when or how he was prejudiced. Clark directs this Court to authority that evidence of a sleeping juror can serve as a ground for a new trial. Clark does not establish how he was prejudiced by the incident if it did occur. *See Batarseh v. State* (1993), Ind.App., 622 N.E.2d 192, 195 (questioning juror as to attentiveness insufficient to establish necessity for new trial or speculation that juror was sleeping).

Next, Clark contends that the State failed to establish beyond a reasonable doubt that he had accumulated two prior unrelated felony convictions to support the habitual offender finding. At the habitual offender stage of the proceedings, the State introduced two exhibits, packets of documents, which established Clark's previous convictions. The question of their admissibility was raised by Clark on direct appeal. The supreme court found no error in their admission.

As noted by the post-conviction court, the exhibits demonstrate that Clark was convicted of burglary, a Class C felony, on July 27, 1978 and of robbery, a Class C felony, on February 19, 1980. The court which sentenced Clark for the robbery conviction imposed a non-suspendable sentence due to Clark's "prior unrelated felony conviction which occurred" July 27, 1978. Further, court minutes relative to the two convictions demonstrate that an affidavit of probable cause and an information were filed against Clark on June 20, 1978, for the 1978 conviction and on December 20, 1979, for the 1980 conviction.

■ While it is true that the date of commission of the crimes is the relevant inquiry in habitual offender proceedings, *see Johnson v. State* (1993), Ind.App., 617 N.E.2d 559, 562, on postconviction Clark has failed to carry his burden of demonstrating error. In *Johnson* the Court stated:

"The courts of this state have construed [the habitual offender] provision to require proof that the second offense was committed after conviction and sentencing on the first and that the principal offense was committed after conviction and sentencing on the second. Proof of the date of commission of the felony for which enhancement has been sought is required if a different jury hears the habitual part of the trial, but proof of conviction of the principal offense is not required, even when a second jury is impaneled. A trial judge cannot lawfully render a sentence upon a defendant's status as an habitual offender without the conviction of the primary underlying felony but once the issue has been decided, it becomes the law of the case and is outside of the realm of the second assembled jury. [Citations omitted.]

The date upon which an offense may have been committed may be found in the State's charging instruments, in tran-

scripts of guilty plea proceedings, within the evidence admitted at trial and in the jury instructions given by the court. The date of commission is not part of the fact of a prior conviction, the proof of which is restricted to authenticated documents. [Citation omitted.]"

*Id.* at 562. Here, the minute sheets and evidence of the convictions sufficiently establish the proper order of the commission of the offenses.

 Finally, Clark contends that he was denied the effective assistance of trial and appellate counsel. Reversal for ineffective assistance of counsel is appropriate when a defendant demonstrates both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced defendant as to deprive him of a fair trial. *Bellmore,* 602 N.E.2d at 123. The Bellmore court noted:

"A claim of ineffective assistance must identify the claimed errors of counsel so that the court may determine whether, in light of all circumstances, counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, defendant must further show a reasonable probability that it altered the outcome of the case."

*Id.* at 123. The same standard applies to both trial and appellate counsel. *Thornton v. State* (1991), Ind., 570 N.E.2d 35, 37.

 As noted above, none of the alleged deficiencies raised by Clark on post-conviction rose to the level of reversible error. Clark's contentions specific to ineffective assistance of counsel amount to complaints regarding strategy or tactics without demon-strating an effect on the outcome of the trial or the result of his first appeal. Review of the record demonstrates adequate trial preparation including vigorous examination and cross-examination by trial counsel. Further, appellate counsel raised and argued viable issues. Clark has not demonstrated ineffective assistance of counsel.

The denial of post-conviction relief is affirmed.

Affirmed.

GARRARD and BAKER, JJ., concur.